IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN PORTER, | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-2617 |
| | : | |
| MERAKEY PARKSIDE RECOVERY, | : | |
| *Defendant*. | : | |

**Jones, II   J.**                                                                                    **September 29, 2022**

## I.     INTRODUCTION

When sixty-six (66) year old Stephen Porter (hereinafter "Plaintiff"), who walks with a limp, applied for a position as a Drug & Alcohol counselor at Merakey Parkside Recovery (hereinafter "Defendant"), two (2) younger candidates were chosen for the job over him.  As a result, Plaintiff filed an employment discrimination claim, alleging violations of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 1201, the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), 81 Stat. 602, as amended, 29 U.S.C. § 21, and the Philadelphia Fair Practice Ordinance (hereinafter "PFPO"), Philadelphia Code § 9-1101.  He claims that Defendant chose to hire allegedly less qualified individuals instead of him because of his disability and his age.  Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 32) (hereinafter "Motion").  For the reasons stated herein, Defendant's Motion is granted in its entirety.

## II.   FACTUAL BACKGROUND

### A.  Defendant's Application Process

Defendant is a non-profit drug and alcohol treatment center in Philadelphia that focuses on substance abuse services, recovery, and providing methadone maintenance to underserved individuals.  SOF ¶ 1; RSOF ¶ 1.[1]  Defendant operates several treatment centers throughout Philadelphia: one being in Germantown and another in Parkside.[2]  SOF ¶ 7; RSOF ¶ 7. Providing services at these locations, Defendant's treatment team consists of: Certified Addictions Counselors, Psychologists, Psychiatrists, Certified Peer Counselors, Licensed and Unlicensed Masters and Bachelors Level Social Workers and Therapists, the American Society of Addiction Medicine, Certified Physicians, and Licensed Practical Nurses.  SOF ¶ 9; RSOF ¶ 9.

To advertise openings for these positions, Defendant maintains an online application platform.  SOF ¶ 13; RSOF ¶ 13.  Once Defendant receives a resume and application for an open position, a recruiter decides whether an interview will be granted.  SOF ¶ 15; RSOF ¶ 15.  If an interview is granted, the recruiter supplies the hiring managers with a copy of the applicant's resume.  SOF ¶ 15; RSOF ¶ 15.

### B.  Plaintiff Interviews at Merakey Parkside's Germantown Location

In April of 2019, Plaintiff submitted an online application and resume[3] via Defendant's online application platform for a Fee for Service (hereinafter "FFS") Drug & Alcohol counselor

---

[1] For purposes of this discussion, the Court shall refer to Defendant's Statement of Undisputed Facts (ECF No. 43-3) as "SOF" and Plaintiff's Response thereto (ECF No. 44-2) as "RSOF."

[2] Though Plaintiff initially also alleged discrimination claims based on age and disability at Defendant's Parkside location, after reviewing Defendant's present Motion, Plaintiff stipulates to the dismissal of such claims.  SOF ¶¶ 20-42; RSOF ¶¶ 20-42.  Accordingly, such claims are dismissed with prejudice, and the Court will not consider them further for purposes of the present opinion.

[3] Though Defendant offers this service to anyone who asks, it is undisputed that, while his interview process was underway, one of Defendant's recruiters, Jill Coleman, worked with Plaintiff on improving his resume to help strengthen his application.  SOF ¶ 58; RSOF ¶ 58.  In addition to providing him with a sample resume,

position at Defendant's Germantown location.  SOF ¶ 18; RSOF ¶ 18.  Interestingly, there are two (2) areas on the job posting that note the minimum job qualifications necessary for the position.  The first paragraph states:

> Master's Degree or higher in chemical dependency, psychology, social work, counseling, nursing (with a clinical specialty in the human services) and other related field and/or full certification as an addictions counselor by a statewide certification body which is a member of a national certification body or certification by another state government's substance abuse counseling certification board and/or current licensure in this Commonwealth as a registered nurse and a degree from an accredited school of nursing and 1 year of counseling experience (a minimum of 1,820 hours) in a health or human service agency, preferably in a drug and alcohol setting.  If a person's experience was not in a drug and alcohol setting, the individuals' written training plan shall specifically address a plan to achieve counseling competency in chemical dependency issues. Additional/specific training and/or education in specific human service/counseling fields related to the field of drug and alcohol only.

*See* Merakey Parkside Drug & Alcohol Counselor Posting, attached to Pl's Resp. as Exhibit 9 (hereinafter "Ex. 9").

On the next page of the job posting, there is another breakdown of the minimum education and experience required for the position.  Ex. 9.  The educational qualifications for the position are listed as follows:

> Master's Degree or higher in chemical dependency, psychology, social work, counseling, nursing (with a clinical specialty in the human services) and other related field and/or full certification as an addictions counselor by a statewide certification body which is a member of a national certification body or certification by another state government's substance abuse counseling certification board
>
> and/or Associate's degree or above in chemical dependency, psychology, social work, counseling, nursing (with a clinical specialty in the human services) and other related field
>
> and/or current licensure in this Commonwealth as a registered nurse and a degree from an accredited school of nursing.

Ex. 9. As for the minimum experience required for the position, the posting further notes the following expectations:

One year clinical experience in a health or human service agency, preferably in a drug or alcohol setting; or

A practicum in a health or human service agency, preferably in a drug and alcohol setting.  If the practicum did not take place in the drug and alcohol setting, the individual's written training plan shall specifically address a plan to achieve counseling competency in chemical dependency issues.

Ex. 9.

When he applied for this position, Plaintiff was a sixty-six (66) year old male.  SOF ¶ 17; RSOF ¶ 17.  Plaintiff was selected for an interview.  SOF ¶ 43; RSOF ¶ 43.  At the time of his interview, Plaintiff had pins and screws in his leg from an automobile accident that affected his gait and restricted his movement.  SOF ¶ 17; RSOF ¶ 17.

On or about August 19, 2019, Plaintiff interviewed with Jordan Seidle, Defendant's Program Director in Germantown, and Robert Wexler, Germantown's Clinical Supervisor.  SOF ¶ 45; RSOF ¶ 45.  By Plaintiff's own estimation, the interview lasted about twenty (20) minutes in total, and he does not note any specific questions or comments around his age or impairment.  SOF ¶ 46; RSOF ¶ 46.  The parties dispute whether Mr. Seidle or Mr. Wexler noticed that Plaintiff walked or sat differently because of his leg.  SOF ¶ 46; RSOF ¶ 46.  However, Plaintiff alleges that as he was walking up the staircase to get to his interview, Mr. Wexler looked at Plaintiff's right leg every step he took, and when he got to the top of the stairs, Mr. Seidle's mouth fell open when he saw the way Plaintiff walked.  *See* Pl's Dep., attached as Exhibit 7 to Pl's Resp., (hereinafter "Ex. 7") at 60:4-14.  Plaintiff further claims that because he was sitting during the interview, he had to keep his leg extended, and both Mr. Seidel and Mr. Wexler kept staring at his leg.  Ex. 7 at 76:2-8; 77:1-25; 78:1.

Plaintiff was undisputedly qualified for the FFS position.  SOF ¶ 47; RSOF ¶ 47.  His resume indicates that he has a master's degree in Behavioral Health from Alvernia University

and a bachelor's degree in Business Administration.  *See* Pl's Resume, attached to Pl's Resp. as Exhibit 4 (hereinafter "Ex. 4").  He also has fifteen (15) years of experience at North Philadelphia Health Systems and seven (7) years as a Clinical Supervisor at the Goldman Clinic Methadone Facility.  *See* Ex. 4.  Despite his qualifications, Defendant decided to hire Dana Warren and Hailey Eresuma over Plaintiff.  SOF ¶ 47; RSOF ¶ 47.

Hailey Eresuma was twenty-nine (29) years old at this time, and she had five (5) months of experience in counseling as a drug and alcohol counselor.  *See* Hailey Eresuma's Resume, attached to Pl's Resp. as Exhibit 11 (hereinafter "Ex. 11").  Ms. Eresuma possessed a bachelor's degree in Psychology from the University of Utah, and her resume does not include any further certifications or licensure.  *See* Ex. 11.  Though Ms. Eresuma was initially hired as an FFS counselor, shortly thereafter, she began the role of an Intensive Outpatient Counselor II (hereinafter "IOP Counselor"), which does not require a master's degree.  *See* Wexler Dep., attached to Resp. as Exhibit 5 (hereinafter "Ex. 5") at 14:8-18; Seidle Dep., attached to Resp. as Exhibit 6 (hereinafter "Ex. 6"), at 15:8-17.

Dana Warren was thirty (30) years old at the time of her hiring, and though she possessed a Master of Social Work from the University of Pennsylvania, she had less than one year of counseling experience.  *See* Dana Warren's Resume, attached to Pl's Resp. as Exhibit 13 (hereinafter "Ex. 13").  Ms. Warren had no prior experience in a drug and alcohol setting, including her internship in outpatient mental health.  *See* Ex. 13.

### C.  Plaintiff's Alleged Disability

Plaintiff contends that he is an individual with a disability because he broke his tibia in a car accident in 2011, nearly eight (8) years before he applied for the positions at issue, and required surgery with the placement of pins and screws.  SOF ¶ 61; RSOF ¶ 61.  After the

surgery, Plaintiff was cleared to return to work without any restrictions.  SOF ¶ 62; RSOF ¶ 62.

On or about April 1, 2013, Plaintiff reinjured his leg and could not return to work without

restrictions.  SOF ¶ 63; RSOF ¶ 63; *see* Temple University Hospital Medical Records, dated

April 1, 2013, attached to Pl's Resp. as Exhibit 14 (hereinafter "Ex. 14").  Plaintiff then received

two (2) weeks of treatment at Temple University Hospital.  SOF ¶ 64; RSOF ¶ 64.

> On April 12, 2013, Plaintiff was seen by a physician at Temple who noted:
>
> Subjective complaints are out of proportion to exam findings.  The objective findings on exam to date do not support any reasonable defects.  I did offer him a CT of his Rt leg but he declined for fear of radiation...States he wants a 2nd opinion about the indication for a CT in this case...I am also advising that PT be stopped in light of lack of objective findings or exam and his report of pain form the PT session provided yesterday.  The plan is for him to have a CT of his leg.  I will have him return in 1 to 2 weeks to inform me of his decision.  If he is agreeable to this study, I will make the recommendation/referral.  If he is not agreeable I have not much more to offer.  I do not find his complaints of shoulder, back, Lt leg pain to be supported by objective findings on exam or consistent[.]

SOF ¶ 65; RSOF ¶ 65; *see* Temple University Hospital Medical Records dated April 12, 2013,

Physician Notes, attached to Def's Mot. as Exhibit 17.  The physician further concluded that

Plaintiff could not return to work without restrictions at this time.  SOF ¶ 65; RSOF ¶ 65; *see* Ex.

14.

In May of 2013, nearly five (5) years he applied for the position with Defendant, Plaintiff

was diagnosed with a "bony contusion of the tibia with a possible muscle strain."  SOF ¶ 66;

RSOF ¶¶ 66; *see* Temple University Hospital Progress Notes, attached as Exhibit 16 to Pl's

Resp. (hereinafter "Ex. 16").  It was further noted that Plaintiff "walks with the use of a cane

with a slightly antalgic gait."  Ex. 16.  At the time, Plaintiff's treatment plan going forward was

for him to return to the physician "as needed if he does not improve."  Ex. 16.[4]

---

[4] Plaintiff does not provide any further medical documentation, so it is unclear if he ever returned for any follow-up visits.

**D.  After Receiving Plaintiff's Charge of Discrimination in February of 2020, Merakey Parkside Provides Incomplete Information to the EEOC**

After learning of Defendant's hiring decision, Plaintiff filed a charge of discrimination based on age and his disability with the Equal Employment Opportunity Commission (hereinafter "EEOC") on or about November 20, 2019.  SOF ¶ 67; RSOF ¶ 67.  Plaintiff filed his final charge on February 6, 2020, and Defendant, by and through its in-house counsel, Jill Garfinkle Weitz, received it on February 20, 2020.  SOF ¶ 67; RSOF ¶ 67.  As part of that investigation, Ms. Weitz began speaking to staff members as to their recollection of Plaintiff. SOF ¶ 68; RSOF ¶ 68.  At the time of this investigation, Plaintiff had spent a total of approximately one (1) hour at two (2) of Merakey's sites in April and August of 2019.  SOF ¶ 68; RSOF ¶ 68.

Throughout the investigation, Ms. Weitz began corresponding with an EEOC investigator in a series of unverified emails and informed the EEOC that Plaintiff had submitted multiple applications[5] and resumes.  SOF ¶ 69; RSOF ¶ 69.  In one such email, on March 4, 2020, Ms. Weitz noted:

> Dear Ms. Lewis,
>
> Thank you for your patience in this matter.  Our systems do not ordinarily note whether an applicant was interviewed for a position, so I had to reach out to multiple people to track down the information.  The information below responds to your request to the best of our ability:
>
> Mr. Porter was interviewed at our Parkside location for a Case Manager position. Barbara Hall was hired to fill that position.  She was 62 years old at the time of hire.
>
> Mr. Porter was interviewed at our Germantown location for a Fee for Service Counselor/Therapist position.  No one was hired for that position, and it was closed out.
>
> Please let me know if you need any other information.
>
> Respectfully,

---

[5] Plaintiff's applications used two (2) separate identifying email and home addresses.  SOF ¶ 70; RSOF ¶ 70.

Jill

SOF ¶ 71; RSOF ¶ 71.  Whether the information provided by Ms. Weitz to the EEOC was accurate or complete is a point of contention amongst the parties.

## III.   PROCEDURAL HISTORY

On June 4, 2020, Plaintiff filed the above-captioned case in the Eastern District of Pennsylvania, alleging perceived disability and age discrimination related to Defendant's failure to hire.  *See* Compl., ECF No. 1.  Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 28, 2020 (ECF No. 9), and Plaintiff responded by filing an Amended Complaint on August 4, 2020 (ECF No. 10).  Therein, he alleges the following four (4) causes of action: (1) violations of the ADA; (2) violations of the PFPO through disability discrimination; (3) violations of the ADEA; and (4) violations of the PFPO through age discrimination.  Defendant filed an Answer on August 17, 2020 (ECF No. 12), and on February 5, 2021, the parties stipulated to the dismissal of Merakey USA, Merakey Pennsylvania, and Merakey Philadelphia, leaving Merakey Parkside as the only remaining Defendant (ECF No. 23).  On November 7, 2021, Plaintiff stipulated to the dismissal of his age-based discrimination claims relating to his April 2019 interview at Merakey Parkside.

Upon completion of discovery, Defendant filed the present Motion on November 19, 2021.  ECF No. 43.  Therein, Defendant argues that Plaintiff's claims are meritless because, aside from pure speculation, there is no record evidence that Plaintiff's alleged disability or age played any role in Defendant's hiring decision.  Mot. 7.[6]  Plaintiff submitted a Response in Opposition (hereinafter "Response") on March 19, 2021 (ECF No. 44), claiming that summary judgment should be denied because there remain questions of material facts surrounding whether

---

[6] The Court will refer to the ECF filing pagination for citation purposes.

Defendant denied Plaintiff employment because of his disability and/or age, especially when the applicants who were hired allegedly lacked the qualifications for the positions.  Resp. 2.  In response to Plaintiff's opposition, Defendant submitted a Reply in Further Support of their Motion (hereinafter "Reply") on December 27, 2021, reiterating that all of Plaintiff's allegations are based on speculation.  ECF No. 47.  With these filings, Defendant's Motion is ripe for the Court's review.

## IV.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citation omitted).  Therefore, to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of

proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal citation omitted). Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. To that end, however, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id.*

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003). However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Feb. 23, 2022), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the

deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon.  Pinpoint citations are required.").

In employment discrimination cases, the summary judgment standard "is applied with added rigor...[because] intent and credibility are crucial issues." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (internal quotation marks omitted).  The Third Circuit has found that "summary judgment is...rarely appropriate in this type of case." *Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 509 (3d Cir. 1996).  "Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment." *Id*. at 509-10 (internal quotation marks omitted).

## V.      DISCUSSION

Defendant has moved for summary judgment, specifically asking this Court to declare the following: (1) Plaintiff was not hired for the Merakey Parkside position for factors other than his alleged disability; and (2) Plaintiff was not hired for the Merakey Parkside position for reasons other than his age.  Mot. 7-8.  Although Plaintiff makes separate claims under both the ADA and PFPO, because they are both governed by the McDonnell Douglas burden-shifting standard, the Court will consider any disability discrimination claims together before proceeding into its ADEA and corresponding further PFPO analysis.  *See Amorosi v. Molino*, No. 06-CV-5524, 2009 WL 737338, at *3 (E.D. Pa. Mar. 19, 2009).

### A.  Plaintiff's ADA and PFPO for Disability Discrimination Claims

"Employers are prohibited from discriminating on the basis of disability with regard to job applications, hiring, advancement, or firing." *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. Apr. 29, 2022).  Plaintiff's claims of disability discrimination under both the ADA and PFPO are governed by the three-part burden shifting analysis set forth in *McDonnell Douglas*

11

*Corp. v. Green.  See Jones v. Child.'s Hosp. of Phila.*, No. 17-CV-5637, 2019 WL 2640060, *5 (E.D. Pa. June 27, 2019).  The first prong of the three-part analysis is to determine whether Plaintiff has met his initial obligation of establishing a prima facie case of discrimination.  *Dorsey v. Pittsburgh Assocs.*, 90 Fed. App'x 636, 639 (3d Cir. 2004).  If Plaintiff fails to present a prima facie case, the Court can dispose of the case "without the heavy lifting that is required if a prima facie case is made out." *Id.* at 638.  If Plaintiff establishes a prima facie case, however, the burden shifts to Defendant to articulate some non-discriminatory reason for its action.  *McDonnell Douglas*, 411 U.S. at 802.  If Defendant succeeds, the burden shifts back to Plaintiff to show that the employer's stated reason was a pretext for intentional discrimination.  *Id.* at 804.

## 1.  Prima Facie Case

Plaintiff bases his disability discrimination claim on a failure to hire theory.  Thus, to establish a prima facie case, Plaintiff must show: "(1) [he] is a disabled person within the meaning of the [ADA]; (2) [he] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) [he] has suffered an otherwise adverse employment decision as a result of discrimination." *Thimons v. PNC Bank, N.A.*, 254 F. App'x 896, 897 (3d Cir. 2007) (citations omitted).  To successfully present a prima facie case, Plaintiff "must establish some causal nexus between his membership in a protected class and the decision to not [hire] him." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).  The Court will consider each requirement of the prima facie case in turn.

### a.  Disabled Person under the ADA

Defendant first contests that Plaintiff cannot make a prima facie showing of discrimination because they dispute whether Plaintiff was legally disabled at the time of their hiring decision.  Mot. 13.  The ADA describes a "disability" with respect to an individual, as:

"(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(1). "[M]ajor activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, concentrating, thinking, communicating, and working." 42 U.S.C. § 1202(2)(A). The ADA Amendments Act of 2008 (hereinafter "ADAA") lowered the standard for finding a disability in favor of broader coverage. *See Tierney v. Geisinger Sys. Servs.*, No. 17-CV-1048, 2020 WL 6119271, at *12 (M.D. Pa. Oct. 16, 2020) (citing *Kieffer v. CPR Restoration and Cleaning Serv., LLC*, 200 F. Supp. 3d 520, 533-34 n.9 (E.D. Pa. 2016)). The ADAA was meant to broaden the spectrum of disability "by 'specifically address[ing] certain impairments that were not receiving the protection that Congress intended—cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities—not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them disabilities.'" *Brearey v. Brennan*, No. 17-CV-2108, 2019 WL 111037, at *5 (E.D. Pa. Jan. 4, 2019) (quoting *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 514 (E.D. Pa. 2012)).

### i.   An Impairment that Substantially Limits Major Life Activities

"To determine whether [Plaintiff] is disabled under Subsection (A), [the Court] 'must first identify the specific life activities that [he] claims are affected and determine whether those activities are 'major activities' under the ADA[.]'" *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 590-91 (E.D. Pa. 2019) (quoting *Mills v. Temple Univ.*, 869 F. Supp. 609, 620 (E.D. Pa.

2012)).  Next, the Court "'must evaluate whether [Plaintiff]'s impairment substantially limits those major life activities.'"  *Id.* (quoting *Mills*, 869 F. Supp. at 620).

Here, Plaintiff asserts that because of a previously broken tibia in his right leg, which was secured by permanent internal hardware, he had to undergo physical therapy, was prescribed a cane, and to this day, has trouble balancing, walking,[7] navigating stairs, kneeling, bending, and lifting.  Resp. 8.  Because of this, Plaintiff alleges that his condition substantially limits his major life activities of walking, standing, and sitting.  Resp. 8.  Defendant disputes that Plaintiff's impairment constitute a disability because he has failed to show that this was anything more than a temporary injury.  Mot. 16.  Having reviewed the filings and Plaintiff's medical records, the Court finds that Plaintiff has failed to adduce sufficient evidence for a jury to find him legally disabled under the ADA.

First, Plaintiff has not established that he suffers an impairment that substantially limits a major life activity—walking and/or standing.  "Though 'substantially limits' is not meant to be a demanding standard, '[n]ot every impairment will constitute a disability within the meaning of this [statute].'"  *Koller*, 850 F. Supp. 2d at 513 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).  A person is substantially limited if they cannot "perform a major life activity as compared to most people in the general population.  An impairment need not present, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii).  Courts must "determine the existence of disabilities on a case-by-case basis.  *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

The Third Circuit "has held only extremely limiting disabilities—in either the short or long term—…qualify for protected status under the ADA."  *Marinelli v. City of Erie, Pa.*, 216

---

[7] Plaintiff walks with a limp.

F.3d 354, 362 (3d Cir. 2000). "While '[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active,' 42 U.S.C. § 120102(4)(D) 'a temporary, non-chronic impairment of short duration is not a disability covered by the [ADA].'" *Kurylo v. Parkhouse Nursing & Rehab. Ctr., LP*, No. 17-CV-004, 2017 WL 1208065, at *4 (E.D. Pa. Apr. 3, 2017) (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012)). "'An injury or illness involving several months of limitation, without long-term or permanent effect, is not a disability under the ADA.'" *Brearey*, 2019 WL 111037 at *5 (quoting *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 436 (E.D. Pa. 2015)). *See Bolden v. Magee Women's Hosp. of Univ. of Pittsburgh Med. Ctr.*, 281 F. App'x 88, 90 (3d Cir. 2008) (affirming the District Court's grant of summary judgment where a plaintiff who was able to return to work without restriction within seven (7) months of injury was found to not qualify as disabled); *Brearey*, 2019 WL 111037, at *6 (granting summary judgment where the plaintiff's ankle injury gradually improved over the course of nearly a year).

In this case, it is undisputed that Plaintiff broke his tibia in a car accident in 2011 and required surgery with the placement of pins and screws. SOF ¶ 61; RSOF ¶ 61. After the surgery, Plaintiff was cleared to return to work without restrictions. SOF ¶ 62; RSOF ¶ 62. On or about April 1, 2013, Plaintiff reinjured his leg and could not return to work without restrictions. SOF ¶ 63; RSOF ¶ 63; *see* Ex. 14. He then received two (2) weeks of treatment at Temple University Hospital and was never cleared for working without a restriction. SOF ¶ 64; RSOF ¶ 64. In May of 2013, he was diagnosed with a "bony contusion [otherwise known as a bone bruise] of the tibia with a possible muscle strain" and was to return to his physician "as needed if he does not improve." SOF ¶ 66; RSOF ¶¶ 66; *see* Ex. 16. Because of this contusion, Plaintiff "walks with the use of a cane with a slightly antalgic gait." *See* Ex. 16. However,

Plaintiff has failed to provide any medical documentation stating whether he returned to his doctor or still requires any treatment for his injuries.

As noted by Defendants, this case is factually similar to *Parrotta*. In *Parrotta*, the plaintiff underwent foot surgery on October 31, 2016, and was not cleared to return to work without restrictions until December 5, 2016.  363 F. Supp. 3d at 593.  He was cleared "for 'full duty' work without restrictions on January 10, 2017, over seven months before his termination." *Id.*  Though the plaintiff still suffered from pain when walking, the Court reasoned this was insufficient to establish a disability.  *Id.*  Because the plaintiff's only record of his impairment was his own testimony at the time of the adverse action, the Court reasoned this was insufficient to establish the plaintiff as disabled.  *Id.*

Like *Parrotta*, Plaintiff has failed to provide the Court with any further guidance from his physician since a medical report in 2013, at least five (5) years before he applied for the position at issue.  He has failed to adduce any evidence—other than his own testimony—that he suffers from a long-term disability or was disabled at the time of his non-hiring.  Though Plaintiff claims that, to this day, he has difficulty balancing, walking, navigating stairs, kneeling, bending, lifting, and walks with a limp, Plaintiff has failed to show that this difficulty is substantially limiting, especially when only Plaintiff's own testimony supports such.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (affirming that a plaintiff is not disabled where he walks with a slight limp and takes stairs at a slow pace and using the handrail).  Most persuasively, when Plaintiff's doctor advised him to return in 2013 if he did not improve, no updated medical records clarify whether such visit occurred.  This suggests to this Court that Plaintiff's injury improved, even if he still experiences minor pains and maintains a limp.  Accordingly, Plaintiff has failed to establish that he was disabled under the ADA at the time of his adverse employment action.

### ii.   Being Regarded as Disabled

Alternatively, Plaintiff alleges that even if the Court finds that he is not actually disabled, he still satisfies the third criteria of the ADA's definition of a disability because Defendant regarded him as being disabled.  Resp. 8-9; *see* 42 U.S.C. § 12102(1).  "A plaintiff states a 'regarded as' claim if s/he 'establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'"  *Eshelman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (quoting 42 U.S.C. § 12102(3)(A)).  "An employee regards a person as disabled when it 'misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing' his or her job requirements."  *Id.* (quoting *Ross v. Kraft Foods N. Am., Inc.*, 347 F. Supp. 2d 200, 204 (E.D. Pa. 2004)).  This "analysis 'focuses not on [the plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him.'"  *Lewis v. Genesis Healthcare Corp.*, 826 F. Supp. 2d 765, 775 (E.D. Pa. 2011) (quoting *Kelly*, 94 F.3d at 108-09).  "[I]n general, an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim."  *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999).  "However, 'the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate...that the employer regarded the employee as disabled...'"  *Lewis*, 826 F. Supp. 2d at 775 (quoting *Kelly*, 94 F.3d at 109).

Here, Plaintiff alleges that as he was having difficulty while walking the staircase to get to his interview, Mr. Wexler looked at his leg.  Resp. 9; *see* Ex. 7 at 60:4-14.  He further asserts that Mr. Seidel then had his mouth wide open as he watched the way Plaintiff was walking.  Resp. 9; *see* Ex. 7 at 60:4-14.  Despite both Mr. Wexler and Mr. Seidel testifying that they do not

even remember Plaintiff's interview, assuming Plaintiff's assertions are true, he still fails to

explain, and this Court fails to see, how this would cause Defendant to conclude that he was

incapable of performing his job requirements, especially when the parties do not dispute that he

was qualified to perform all his essential job duties.

Additionally, though Plaintiff's claims may show that Defendant noticed Plaintiff

suffered from some form of a physical impairment, he does not provide any further information

to ascertain that Defendant considered them to be a disability.  The Third Circuit has continually

held that not only must a plaintiff be disabled to bring a disability discrimination claim, but the

employer must have also been aware of his disability to establish a prima facie case.  *See*

*Straining v. AT&T Wireless Servs., Inc.,* F. App'x 229, 232 (3d Cir. 2005) (proving a disability

discrimination claim requires the employer to have been aware of plaintiff's disability);

*Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002) (granting summary judgment

where a plaintiff could not show that his employer was aware he had asthma, a recognized

disability); *Jones v. UPS*, 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any

ADA claim that the plaintiff be disabled and that the employer be aware of the disability.").

Here, not only has Plaintiff failed to establish that he is disabled under a "regarded as"

definition, but he also Plaintiff provides no evidence, beyond his own speculation, that his

interviewers, who only interacted with Plaintiff for twenty (20) minutes, were aware of this

alleged disability.  Without such proof, Plaintiff has failed to establish that he is disabled under

any of the ADA's three (3) definitions and cannot establish a prima facie case of disability

discrimination.  Thus, the Court must grant summary judgment as to Plaintiff's ADA (Count I)

and PFPO (Count II) claims.

### 2.  Defendant's Non-Discriminatory Reason for Not Hiring Plaintiff

Because the Court finds that Plaintiff has failed to establish a prima facie case of disability discrimination, the Court is not required to continue its analysis of the McDonnell Douglas burden-shifting framework.  However, assuming *arguendo* that Plaintiff did establish a prima facie case of disability discrimination, the Court would then analyze whether Defendant had a legitimate, non-discriminatory reason as to why it selected other candidates for the position.  Defendant's burden of production at this stage is "'relatively light.'"  *Norman v. Reading Sch. Dist.*, 441 F. App'x 860, 864 (3d Cir. 2011) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).  To meet this burden, "the defendant must introduce evidence which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'"  *Tolan v. Temple Health Sys. Transp. Team*, No. 09-CV-5492, 2013 WL 706049, at *4 (E.D. Pa. Feb. 26, 2013) (quoting *Fuentes*, 32 F.3d at 763).  *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997) ("The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the [employment action]; the defendant need not prove that the articulated reason actually motivated [their decision].").

Here, though Defendant does not dispute that Plaintiff was qualified for the Drug & Alcohol counselor position, Defendant states that they did not hire Plaintiff because the other individuals, Ms. Warren and Ms. Eresuma, were believed to be better fits for the position.  Mot. 18.  Specifically, Defendant notes the following two (2) primary reasons the chosen candidates were hired: (1) both individuals had previously worked for Defendant, one as a full-time staff and the other as a temporary employee, so Defendant had first-hand knowledge of their breadth of work; and (2) both individuals interviewed well.  Mot. 18.  Defendant further explains that

though Ms. Eresuma did not have a master's degree, she was paid significantly less than Ms. Warren and was never actually put into the FFS position she interviewed for because an IOP position became available.  Mot. 18.  In addition to Ms. Warren and Ms. Eresuma's desirable qualities, Defendant further notes that Plaintiff did not interview well, noting his dubious responses to clinical questions related to the treatment of Defendant's consumers and the overall fit Plaintiff would have in Defendant's organization.  Mot. 17.  Plaintiff rebuts this point and posits that neither Ms. Warren nor Ms. Eresuma were qualified for the positions for which they were chosen.  Resp. 11.  Given Defendant's light burden at this stage, the Court finds that they have provided a legitimate, nondiscriminatory reason for their hiring decision.

While the Court recognizes that Plaintiff may proffer that his qualifications were superior to the chosen candidates, such an argument is evidence of pretext.  *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) ("Under this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext."); *Waris v. Heartland Home Healthcare Servs., Inc.*, 365 F. App'x 402, 405 (3d Cir. 2010) (considering differences in applicants' qualifications to determine whether the employer's alleged legitimate, nondiscriminatory reason was pretextual); *Waris v. HCR Manor Care*, No. 07-CV-3344, 2009 WL 330990, at *12 (E.D. Pa. Feb. 10, 2009) ("Plaintiff correctly cites to cases that state that evidence of a plaintiff's superior qualifications can be used to show pretext.").  With this precedent as guidance, though the Court will consider any differences in qualifications in its *arguendo* pretext analysis, the Court finds that if Plaintiff had established a prima facie case of disability discrimination, Defendant would have put forth sufficient evidence to identify a legitimate, nondiscriminatory reason for their hiring decision.

### 3. Pretext for Discrimination

Continuing with this *arguendo* analysis, the final stage of the McDonnell Douglas burden-shifting framework would require Plaintiff to show that Defendant's stated nondiscriminatory reason is pretextual for discrimination. To do this, Plaintiff must submit evidence "from which a reasonable factfinder could reasonably (1) disbelieve the employer's articulated legitimate reasons or (2) believe that discrimination was more likely than not the motivating or determinative cause of the adverse employment action." *Waris*, 2009 WL 330990, at *11 (citing *Fuentes*, 32 F.3d at 764). Importantly, Plaintiff cannot establish pretext "merely by showing that the adverse employment decision was mistaken, wrong, imprudent, unfair, or even incompetent." *Id.* (citing *Fuentes*, 32 F.3d at 765). "Rather, [he] must show such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the reasons articulated by the employer that a jury could reasonably find them unworthy of credence." *Id.* (citing *Fuentes*, 32 F.3d at 765).

#### a. Plaintiff's Qualifications vs. Ms. Eresuma and Ms. Warren

First, Plaintiff asserts that Defendant's arguments are pretextual because the individuals hired for the positions were not qualified. Resp. 11. Specifically, he states that Ms. Eresuma lacks the master's degree required to be a Drug & Alcohol counselor, and both Ms. Warren and Ms. Eresuma did not have enough experience for the jobs. Resp. 17. By contrast, Plaintiff notes that his own qualifications dwarf those of both Ms. Warren and Ms. Eresuma. Resp. 17. The Court will consider each argument in turn.

As to the educational qualifications of Ms. Warren and Ms. Eresuma, the Court recognizes that there is some inconsistency in the listed necessary educational requirements for the Drug & Alcohol counselor job posting. It states the following educational requisites:

> Master's Degree or higher in chemical dependency, psychology, social work, counseling, nursing (with a clinical specialty in the human services) and other related field and/or full certification as an addictions counselor by a statewide certification body which is a member of a national certification body or certification by another state government's substance abuse counseling certification board
>
> and/or Associate's degree or above in chemical dependency, psychology, social work, counseling, nursing (with a clinical specialty in the human services) and other related field
>
> and/or current licensure in this Commonwealth as a registered nurse and a degree from an accredited school of nursing.

*See* Ex. 9.  This is a notably different requirement than stated in a prior paragraph of the job posting because these requirements allow someone with an Associate's degree to be qualified for the job.[8]  Regardless of which qualification statement is accurate, it is undisputed that at least Ms. Warren meets the minimum educational requirements as she possesses a master's in Social Work from the University of Pennsylvania.  *See* Ex. 13.  With these conflicting postings, it is not readily apparent whether Ms. Eresuma was qualified for an FFS position as a Drug & Alcohol counselor when she only possesses a Bachelor's in Psychology from the University of Utah.  *See* Ex. 11.

   Though Defendant attempts to rebut this point and argue that Ms. Eresuma was hired for an IOP counselor position, which does not require a master's degree, according to the

---

[8]  The other qualification paragraph on the previous page of the job posting is stated as follows:

> Master's Degree or higher in chemical dependency, psychology, social work, counseling, nursing (with a clinical specialty in the human services) and other related field and/or full certification as an addictions counselor by a statewide certification body which is a member of a national certification body or certification by another state government's substance abuse counseling certification board and/or current licensure in this Commonwealth as a registered nurse and a degree from an accredited school of nursing and 1 year of counseling experience (a minimum of 1,820 hours) in a health or human service agency, preferably in a drug and alcohol setting.  If a person's experience was not in a drug and alcohol setting, the individuals' written training plan shall specifically address a plan to achieve counseling competency in chemical dependency issues.  Additional/specific training and/or education in specific human service/counseling fields related to the field of drug and alcohol only.

Ex. 9.

depositions of Mr. Wexler and Mr. Seidle, Ms. Eresuma was initially hired as an FFS counselor

and then shortly thereafter began the role of an IOP counselor.  *See* Ex. 5 at 14:8-18; Ex. 6 at

15:8-17.  Thus, the Court must consider the listed qualifications of the FFS position in

comparing Plaintiff to Ms. Warren and Ms. Eresuma.

      In addition to an educational requirement, the job posting for the FFS position also listed

the following as a minimum experience requirement:

> One year clinical experience in a health or human service agency, preferably in a drug or
> alcohol setting; or
>
> A practicum in a health or human service agency, preferably in a drug and alcohol
> setting.  If the practicum did not take place in the drug and alcohol setting, the
> individual's written training plan shall specifically address a plan to achieve counseling
> competency in chemical dependency issues.

*See* Ex. 9.  Despite this requirement, Plaintiff posits that Ms. Eresuma only had five (5) months

of experience as a counselor in a drug and alcohol setting, and Ms. Warren only had eight (8)

months of experience in Outpatient Mental Health with no experience in a drug and alcohol

setting.  Resp. 12.  Defendant responds that both Ms. Warren and Ms. Eresuma possessed the

requisite level of skill required for the positions without further explanation.  Reply 4.

      Though a dispute remains among the parties as to whether Ms. Eresuma or Ms. Warren

were qualified for the positions as guided by the job posting, what remains undisputed is that

Plaintiff's resume indicated he had more years of experience than either Ms. Eresuma or Ms.

Warren.  In certain circumstances, such may present evidence of pretext.  *Mlynczak v. Bodman*,

442 F.3d 1050, 1059 (7th Cir. 2006) (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir.

2002)) ("evidence of the applicants' competing qualifications does not constitute pretext unless

those differences are so favorable to the plaintiff that there can be no dispute among reasonable

persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue).[9]

Even assuming Plaintiff had more educational and skill experience than Ms. Eresuma and Ms. Warren for the positions, however, these were not Defendant's only stated reasons for their hiring decision.  Defendant claims that both individuals had previously worked for Defendant, one as a full-time staff and the other as a temporary employee, so Defendant had first-hand knowledge of their breadth of work, and they interviewed well.  Mot. 18.  Also, Defendant notes that one of the individuals is bilingual, speaking both English and Spanish, which Defendant notes to be a benefit for the English Second Language population that Defendant services.  Mot. 17.  By contrast, Defendant states that Plaintiff's interview did not go as well.  Mot. 17.  Plaintiff attempts to dispute these points, suggesting neither Mr. Seidle nor Mr. Wexler had personally worked with either Mr. Eresuma or Ms. Warren, and he claims that his interview was appropriate, reiterating his own qualifications.  Resp. 13.  He further speculates that his own interview may not have been as memorable as Ms. Eresuma's or Ms. Warran's given his "obvious disabilities."  Resp. 17-18.

However, such statements do not rebut that an employer may prefer a candidate who has previously worked for their company, regardless of whether the interviewer personally worked with the employee.  Had Defendant's only reason for its hiring decision been because Ms. Eresuma and Ms. Warren were better qualified than Plaintiff, the Court would have agreed that

---

[9] Though qualifications may provide evidence of pretext, Plaintiff has failed to cite and this Court's independent research has failed to find, precedent that requires an employer to only consider candidates who match the listed job qualifications on a posting, otherwise this raises an inference of discrimination.  In fact, logic suggests that while listed qualifications on a job posting may be ideal, it is in the sole discretion of the employer to decide which candidate they would like to hire, regardless of whether this may be a logical or smart hiring decision.  *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (Courts "do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [discrimination laws] do[ ] not interfere.") (internal citation and quotation marks omitted).

this could have created an inference of pretext.  However, because Defendant notes other, legitimate reasons for its hiring decision, which Plaintiff can only rebut with his own speculation, "the differences between [Ms. Eresuma and Ms. Warren] and [Plaintiff are] not so disparate that a reasonable factfinder could rationally conclude that [Plaintiff] was clearly the better candidate for the job." *Waris*, 365 F. App'x at 405.  "To survive summary judgment on the issue of pretext, it is not enough for a plaintiff to show that an employer's decision was misguided or wrong."  *Id.* (citing *Fuentes*, 32 F.3d at 765).  Thus, though Plaintiff may disagree with Defendant's decision and believe that he was the better candidate for the position, even assuming Plaintiff would have been a "better" choice for the job, this, alone, is insufficient, to show that Defendant's hiring decision was pretext for discrimination.

### b.  Ms. Weitz's Inaccuracy to the EEOC

In addition to arguments over his qualifications, Plaintiff points to the fact that Defendant's general counsel, Ms. Weitz, told the EEOC that the position Plaintiff applied for was not filled and closed out as evidence of pretext.  Resp. 18; SOF ¶ 71; RSOF ¶ 71.  There remains some dispute as to the veracity of this statement as, though both Ms. Eresuma and Ms. Warren were hired for the open FFS positions, because Ms. Eresuma began a job as an IOP counselor instead, one (1) FFS position remained open.  Plaintiff posits that such a statement was an intentional fabrication made to the EEOC to cover up any discriminatory intent.  Resp. 18-19.  Defendant does not dispute that Ms. Weitz's statement may have some slight inaccuracy; however, because Plaintiff submitted multiple resumes, applications and addresses while utilizing multiple different addresses, it is understandable that confusion[10] could have caused Ms. Weitz to misstate the circumstances surrounding Plaintiff's interviews.  Mot. 24-25.  Defendant

---

[10] The Court also recognizes that Defendant was investigating Plaintiff's EEOC claim in March of 2020, just as businesses began to go remote due to the COVID-19 pandemic.

further notes that supplying incorrect information to the EEOC does not create a triable issue of material fact because the information was not a "post hoc" fabrication.  Mot. 18.  Having reviewed the filings, the Court agrees with Defendant.

In coming to this conclusion, the Court looks to guidance from *Hennessey v. Dollar Bank, FSB*, where after an employee was terminated, the employer made undeniably false statements to the EEOC during their investigation.  No. 18-CV-977, 2019 WL 6790633, at *8-9 (W.D. Pa. Dec. 12, 2019).  Despite these false statements describing more "inflammatory [behavior] than Plaintiff's actual conduct," the reason behind the plaintiff's termination did not change.  *Id.*  The Court concluded that "while the motivation for submitting a false statement recitation...may be suspect, it does not represent a post-hoc fabrication that relates to the pivotal issue in this case, that is, [the defendant]'s reason for [the adverse employment action]."  *Id.* at *9.

Similarly, here, because both Ms. Warren and Ms. Eresuma were hired, at least initially, for the FFS Drug & Alcohol counselor positions, Ms. Weitz's statement to the EEOC is, at the minimum, factually incomplete and misleading.  Though her behavior may be suspicious, Plaintiff fails to explain, and this Court fails to see, how a single misstatement relates to Defendant's reasoning for why they decided not to hire Plaintiff, especially when Ms. Weitz was not involved in the hiring process.  Without more, a single, explainable misstatement cannot "'allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications[.]'"  *Kost v. Dep't. of Pub. Welfare*, No. 07-CV-2404, 2011 WL 6301956, at *14 (E.D. Pa. Dec. 16, 2011) (quoting *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d. Cir. 1999)).

Accordingly, though Plaintiff fails to present a prima facie case of disability discrimination, even if he did, summary judgment would still appropriately be granted because he fails to explain how Defendant's legitimate, non-discriminatory reasons for their hiring decision are pretextual.

### B.  ADEA and PFPO Age Discrimination Claims

In addition to his disability discrimination claims, Plaintiff raises age discrimination arguments under the PFPO and ADEA.  The ADEA protects employees who are forty (40) years old and older from adverse employment actions that result from their age alone.  *Palmer v. Britton Indus., Inc.*, 662 F. App'x 147, 150 (3d Cir. 2016).  Because the PFPO and ADEA are both analyzed under the same legal framework, the Court will consider them together.  *See Jones*, 198 F.3d at 409 ("We do not distinguish between the claims under federal and Pennsylvania law in our disposition of the case as...[they] are the same for purposes of determining the summary judgment motion."); *Niven-Himes v. Pennsylvania Hosp. of Univ. of Pa. Sys.*, No. 20-CV-558, 2021 WL 5298982, at *2 n.1 (E.D. Pa. Nov. 15, 2021) (resolving ADEA and PFPO claims concurrently under the same legal framework); *Ngai v. Urban Outfitters, Inc.*, No. 19-CV-1480, 2021 WL 1175155, at *7 (E.D. Pa. Mar. 24, 2021) ("Because such claims [ADEA, PHRA, and PFPO] are analyzed under similar legal frameworks, they will be considered as appropriate.").

In bringing an age discrimination claim, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  This means that it is insufficient to simply show that age was a motivating factor in the hiring decision; rather, Plaintiff must point to some evidence that age "had a 'determinative influence' on the decision."  *Palmer*, 662 F. App'x at 150 (quoting

*Gross*, 557 U.S. at 176).  Absent direct evidence of discrimination, like the present action, Courts apply McDonnell Douglas's burden-shifting framework to analyze an age discrimination claim. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

To plead a prima facie case of age discrimination based on a failure to hire theory, "a plaintiff is required to show that: (1) he belonged to a protected class; (2) the defendant failed to hire him; (3) he was qualified for the position in question; and (4) circumstances giving rise to an inference of discrimination accompanied the failure to hire him." *Landmesser v. Hazelton Area Sch. Dist.*, 574 F. App'x 188, 189 (3d Cir. 2014).  If the plaintiff establishes a prima facie case, "the burden shifts to the employer to show that the action it took was not discriminatory." *Id.*  If the employer shows a nondiscriminatory reason for the hiring decision, the burden shifts back to the plaintiff "to 'present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision.'" *Id.* (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)).  This evidence must either suggest that the proffered reasons by the employer are a fabrication or that age discrimination was more likely than not the motivating factor for the hiring decision.  *Id.*

### 1.  Prima Facie Case

Here, both parties do not dispute that Plaintiff has met the first three (3) prongs of establishing a prima facie case of age discrimination.  However, Defendant argues that Plaintiff fails to establish that their hiring decision raises an inference of discrimination because he cannot show that Defendant had knowledge of his age.  Mot. 26-27.  Moreover, Defendant asserts that Plaintiff cannot point to any discriminatory statement made by his interviewers, both of whom were over the age of forty (40).  Mot. 26-27.  Plaintiff rebuts this point, noting that Defendant could deduce his approximate age from both his appearance and resume; additionally, he posits

that because two (2) younger women were offered the position over him, this creates an inference of age discrimination.  Resp. 24.  Having reviewed the filings, the Court agrees with Defendant.

"Although an employee's physical appearance might suggest that he/she is more than forty years of age," the Third Circuit requires the plaintiff to show that the employer had actual knowledge of his/her age to raise an inference of age discrimination.  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 790 (3d Cir. 2003).  In addition to his physical appearance, Plaintiff, here, argues that his resume notes he graduated college in 1973 and suggests his minimum age.  Resp. 24.  While the Court recognizes that this District has considered how years listed on a resume could help an employer deduce an applicant's age, this fact, alone, is insufficient to show the employer had actual knowledge of the person's age.  *See Waris*, 2009 WL 330990, at *17-18. Practically speaking, such a conclusion is logical when people may attend school or begin careers at different points in their lives, so years on a resume are not necessarily correlated with age.  Though the Court recognizes that such a fact could assist a plaintiff in establishing a claim of age discrimination, there must be something more to be successful in showing that the employer had knowledge of their age.

In this case, Plaintiff does not point to any other fact than his appearance and resume to suggest that Defendant had knowledge of his age.  Without such evidence, summary judgment as to Plaintiff's ADEA (Count III) and PFPO for age discrimination claims (Count IV) must be granted.

### 2.   Non-Discriminatory Reasons and Pretext

Like his disability discrimination claim, because Plaintiff has failed to establish a prima facie case of age discrimination, the Court need not continue its analysis of the McDonnell

Douglas burden-shifting framework.  However, even assuming *arguendo* that Plaintiff had established a prima facie case, summary judgment as to his age discrimination claims would still be granted because Plaintiff fails to establish pretext.  Because the parties' reasoning for the legitimate non-discriminatory reason and pretext are nearly identical to their arguments regarding disability discrimination, and the Court has already considered these at length, the Court's previous analysis applies.

## VI.    CONCLUSION

Because Plaintiff, even after the benefit of discovery, has failed to present a prima facie case for either his disability or age discrimination claims, Defendant's Motion for Summary Judgment must be in its entirety.

An appropriate order follows.


                                                    BY THE COURT:


                                                    */s/ C. Darnell Jones, II*
                                                    C. DARNELL JONES, II      J.

30